IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, <br><br> Plaintiff, <br><br> v. <br><br> INTERIOR BOARD OF LAND APPEALS and UNITED STATES DEPARTMENT OF THE INTERIOR, <br><br> Defendants. | MEMORANDUM DECISION AND ORDER GRANTING MOTION TO INTERVENE <br><br><br> Case No. 1:19-CV-95-TS-PMW <br><br> District Judge Ted Stewart |

This matter is before the Court on a Motion to Intervene by the State of Utah, the Utah

Department of Agriculture and Food ("UDAF"), and the State of Utah School and Institutional

Trust Lands Administration ("SITLA") (collectively, the "State"). For the following reasons, the

Court will grant the Motion.

## I. BACKGROUND

Plaintiff Western Watersheds Project ("WWP") is a conservation group devoted to

improving grazing management across the western public lands.[1] WWP brought this lawsuit to

reverse a decision of the Interior Board of Land Appeals ("IBLA") and to reverse the Bureau of

Land Management's ("BLM") decision renewing grazing permits on the Duck Creek allotment.

The Duck Creek Allotment consists of 1,078 acres of SITLA land, 8,617 acres of private land,

and 13,090 acres of federal land located wholly in Utah.[2]

---

[1] *See* Docket No. 1, at 3.
[2] *See* Docket No. 12-1, at 3.

In 2008, WWP presented BLM with evidence that grazing on the Duck Creek allotment was degrading fish and wildlife habitat among other damage in violation of environmental statutes.[3]  Nevertheless, BLM approved a new grazing decision for the Duck Creek allotment ("BLM Final Decision"). [4]  WWP appealed the BLM Final Decision and an administrative law judge ("ALJ") reversed and remanded BLM's decision.[5]  BLM appealed the ALJ's decision to IBLA, which reversed the ALJ's rulings and upheld BLM's 2008 decision.[6]  The State did not participate in those proceedings.

WWP responded to IBLA's decision by filing this case in the United States District Court for the District of Idaho.[7]  IBLA filed a motion to transfer venue, and before that motion was ruled upon, the State filed this Motion to Intervene.[8]  The Idaho Court granted IBLA's Motion to transfer venue to this Court but did not rule on the Motion to Intervene.[9]

## II.    DISCUSSION

### A.  Intervention as a Matter of Right

Under Federal Rule of Civil Procedure 24, a movant may intervene as a matter of right or through permissive intervention.  There are two situations that allow a movant to intervene as a matter of right.  The first is when a movant "is given an unconditional right to intervene by a federal statute,"[10] and the second is when a movant satisfies four requirements.[11]

---

[3] *See* Docket No. 15, at 2–3
[4] *See id.* at 3.
[5] *See id.* at 3–5.
[6] *See id.* at 5.
[7] *See generally* Docket No. 1.
[8] *See generally* Docket Nos. 6, 12.
[9] *See* Docket No. 19.
[10] FED. R. CIV. P. 24(a)(1).
[11] *See id.* at (a)(2); *see also United States v. Albert Inv. Co., Inc.*, 585 F.3d 1386, 1391 (10th Cir. 2009).

There is no federal statute granting the State the right to intervene, so the State may only intervene as a matter of right if: "(1) the application is timely; (2) the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) the applicant's interest may as a practical matter be impair[ed] or impede[d]; and (4) the applicant's interest is [not] adequately represented by existing parties."[12] These "factors . . . are intended to capture the circumstances in which the practical effect on the prospective intervenor justifies its participation in the litigation, and those factors are not rigid, technical requirements."[13] Also, the Tenth Circuit follows "a somewhat liberal line in allowing intervention."[14]

Here, it is undisputed that the State's Motion is timely,[15] so the Court moves to the next step of the analysis and considers the State's interest in the action.

1. Interest

"[T]he contours of the interest requirements have not been clearly defined," but "the interest must be direct, substantial, and legally protectable."[16] "Establishing the potential impairment of such an interest presents a minimal burden and such an impairment may be contingent upon the outcome of [] litigation."[17] Further, "the requirements for intervention may be relaxed in cases raising significant public interests."[18] This "inquiry is highly fact-specific,

---

[12] *Coal. of Ariz./N.M. Ctys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 840 (10th Cir. 1996) (internal citations and quotation marks omitted) (alterations in original).
[13] *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010) (internal quotation marks omitted).
[14] *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1249 (10th Cir. 2001) (internal citations and quotation marks omitted).
[15] *See* Docket No. 15, at 7 ("[T]he Utah movants fail to meet the second, third, and fourth requirements of Rule 24(a).").
[16] *Utah Ass'n of Ctys.*, 255 F.3d at 1251 (internal quotation marks omitted).
[17] *Kane Cty. v. United States*, 928 F.3d 877, 891 (10th Cir. 2019) (alteration in original) (internal quotation marks and citations omitted).
[18] *Id.* at 890.

and . . . the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."[19] The Tenth Circuit has concluded that the threat of economic injury from the litigation's outcome is sufficient to support intervention.[20] Also, "organizations whose purpose is the protection and conservation of wildlife and its habitat have a protectable interest in litigation that threatens those goals."[21]

The State argues that it has multiple interests that warrant intervention. First, the State "has an interest in protecting the environmental quality of real property and resources within its borders."[22] Second, the State has an "interest in the ecologically healthy and successful management of livestock grazing on the 1,078 acres of SITLA lands within the Duck Creek allotment . . . ."[23] Third, the State "has an interest in protecting its financial and socioeconomic stake in grazing operations in Utah."[24] Finally, the State "benefits financially from livestock grazing on federal lands within the Duck Creek Allotment . . . ."[25]

WWP does not contest the authenticity of the State's interests. Rather, WWP argues that "Utah has not shown a relationship between its alleged interests and the subject of this case— IBLA's appellate review process of BLM grazing decisions."[26] WWP frames this case as a review of the "legal and factual errors by Defendant IBLA" and not an attempt "to 'end[] the

---

[19] *Utah Ass'n of Ctys.*, 255 F.3d at 1251–52 (internal citations omitted).
[20] *See, e.g.*, *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009); *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002).
[21] *Utah Ass'n of Ctys.*, 255 F.3d at 1252; *accord, e.g.*, *Mausolf v. Babbit*, 85 F.3d 1295, 1302 (8th Cir. 1996).
[22] Docket No. 12-1, at 7.
[23] *Id.* at 8.
[24] *Id.*
[25] *Id.*
[26] Docket No. 15, at 8.

practice of rotation grazing on federal lands within the Duck Creek Allotment . . . .'"[27] In short, WWP argues that "Utah's interest in maintaining the rotational grazing system on the Duck Creek allotment or grazing on Utah state lands is not related to IBLA's appellate review process and, therefore, Utah has failed to show it is entitled to invention [sic] as of right."[28]

Here, the State's sovereign, financial, environmental, and socio-economic interests are enough to warrant intervention and directly relate to this case's outcome.[29] WWP's attempt to frame this case as a review of the legal and factual errors by Defendant IBLA is too narrow and contrary to this Court's responsibility to assess the State's interests in light of the litigation's outcome.[30] In WWP's complaint, it seeks to "[r]everse and vacate IBLA's September 22, 2017 Duck Creek Decision; Reinstate ALJ Hefferan's May 16, 2013 Decision; [and] [r]emand to DOI with instruction to issue new decision consistent with the ALJ Decision . . . ."[31] In other words, WWP asks this Court to require the Department of Interior to issue a new grazing decision, and a new grazing decision would undoubtedly impact the State's stated interest. In considering an intervention motion, this Court may not divorce the legal basis of a claim from the relief that it

---

[27] *Id.* (quoting Docket No. 12-1, at 6) (alteration in original).

[28] *Id.*

[29] *See, e.g.*, *WildEarth Guardians*, 573 F.3d at 996 (concluding that the threat of economic injury resulting from the litigation's outcome was a sufficient interest); *Utahns for Better Transp.*, 295 F.3d at 1115 (concluding that specific, economic interests were sufficient to warrant intervention); *Utah Ass'n of Ctys.*, 255 F.3d at 1252 (concluding that a wildlife photographer who had been instrumental in the decision to list an owl under the Endangered Species Act possessed a legal interest); *Mausolf*, 85 F.3d at 1302 (concluding that an environmental group possessed an interest in a national park's environmental wellbeing).

[30] *See Kane Cty.*, 928 F.3d at 891 ("Establishing the potential impairment of such an interest presents a minimal burden and such an impairment may be contingent upon the outcome of [] litigation") (alteration in original) (internal quotation marks and citations omitted); *WildEarth Guardians*, 573 F.3d at 996 ("The threat of economic injury from the *outcome of litigation* undoubtedly gives a petitioner the requisite interest.") (internal quotation marks and citations omitted) (emphasis added).

[31] Docket No. 1, at 21.

seeks.  Accordingly, the State's factual allegations are enough for the Court to find that the State has a legally protectable interest.

    2.  Impairment

The next step is to decide whether disposition of the action may, as a practical matter, impair or impede the State's ability to protect that interest.  Often, "the question of impairment is not separate from the question of existence of an interest."[32]  "To satisfy this element of the intervention test, a would-be-intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied.  This burden is minimal."[33]  Finally, "[l]itigation impairs a third party's interests when the resolution of the legal questions in the case effectively foreclose the rights of the proposed intervenor in later proceedings, whether through res judicata, collateral estoppel, or *stare decisis*."[34]

Were WWP to prevail, livestock grazing on the Duck Creek allotment would undoubtedly change and would impact the State's stated interests.  For example, if WWP prevails and a new grazing decision diminishes grazing on the Duck Creek allotment, then the State would lose revenue generated by livestock grazing.  Alternatively, if a new grazing decision increased grazing or altered the rotational grazing operations, the State's other stated interests would be implicated.  Moreover, the State's ability to manage its environmental and socio-economic interests may be impacted because IBLA's interpretation of grazing regulations creates legal precedent.  Therefore, this Court finds that the State's interests would be impaired were WWP to prevail.

---

[32] *Utah Ass'n of Ctys.*, 255 F.3d at 1253 (internal quotation marks omitted).
[33] *Id.* (internal quotation marks omitted).
[34] *Ute Distrib. Corp. v. Norton*, 43 F. App'x 272, 279 (10th Cir. 2002) (citing *Federal Deposit Ins. Corp. v. Jennings*, 816 F.2d 1488, 1492 (10th Cir. 1987)).

3.  Representation

"Even if an applicant satisfies the other requirements of Rule 24(a)(2), it is not entitled to intervene if its 'interest is adequately represented by existing parties.'"[35]  The burden on an intervening party to show inadequate representation of interests is minimal and is satisfied when the movant "shows that representation of his interest may be inadequate."[36]  Generally, "[w]hen a would-be intervenor's and the representative party's interests are 'identical,' we presume adequate representation."[37]  However, "where the purportedly adequate representative of the proposed intervenor's interest is a government entity, this presumption [can be] rebutted by the fact that the public interest the government is obligated to represent may differ from the would-be intervenor's particular interest."[38]  Similarly, the public interest the federal government is obligated to represent may differ from the state government's interest.[39]

For example, in *Wildearth Guardians v. Salazar*, the State of Wyoming sought intervention in a case between conservation groups and the U.S. Department of Interior over coal mine leases.[40]  The court concluded that Wyoming would not be adequately represented by the federal defendants because the state's "interests in the natural resources within state borders and the economic effects on the state of mining regulations are not necessarily represented by federal agencies or private companies."[41]  The court further explained:

> [t]he mere fact that other defendants might hypothetically take Wyoming's interests
> into account when shaping their arguments does not mean that they would afford

---

[35] *San Juan Cty. v. United States*, 503 F.3d 1163, 1203 (10th Cir. 2007) (en banc), *abrogated on other grounds by Hollingsworth v. Perry*, 570 U.S. 693 (2013) (quoting FED. R. CIV. P. 24(a)(2)).
[36] *Tri-State Generation and Transmission Ass'n v. N.M. Public Regulation Comm'n.*, 787 F.3d 1068, 1072 (10th Cir. 2015).
[37] *Kane Cty.*, 928 F.3d at 892.
[38] *Id.* (internal quotation marks omitted).
[39] *See Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 19–20 (D.D.C. 2010).
[40] *Id.* at 8.
[41] *See id.* at 19–20 (quoting *Earthworks v. U.S. Dep't of Interior,* No. 09 Civ. 1972, 2010 WL 3063143, at *2 (D.D.C. Aug. 3, 2010)).

the same primacy to Wyoming's interests in, for instance, maintaining its unique role in regulating coal mining operations and environmental quality or its financial and social economic interests in the development of coal mining operations within its borders.[42]

Here, the State's intervention interests are not necessarily congruent with the federal defendant's interests. For example, the State, like in *Wildearth Guardians*, has a unique role in managing livestock grazing on SITLA lands held in trust. BLM does not have a similar interest in the successful utilization of those lands. Further, the State maintains a unique role in regulating livestock grazing operations and environmental quality. It also has strong financial and socio-economic interests in the rotational grazing operations within the Duck Creek allotment. Although the State may share certain interests with the federal defendants, the State's interest may not necessarily be represented with the same level of urgency and priority as the federal defendants' interests.[43] Accordingly, the State has met its *de minimis* burden of showing that its interests are unlikely to be represented by the federal defendants.

B. Permissive Intervention

While the Court need not reach this issue, the State also argues that it should be granted permissive intervention.[44] There are two ways in which a party may be given permissive intervention. The first is when a movant "is given a conditional right to intervene by federal statute."[45] The second is when a movant "has a claim or defense that shares with the main action a common question of law or fact."[46] When assessing a motion for permissive intervention, "the

---

[42] *Id.* at 20.
[43] *See Wildearth Guardians v. Jewell*, 2:16-cv-168, 2016 WL 4133533 at *5 (D. Utah Aug. 3, 2016) (permitting the State of Utah to intervene because although Utah may or may not make similar policy decisions as the federal defendants, "its intervention is justified by the mere fact that it may prioritize its interests differently.")
[44] *See* Docket No. 12-1, at 11–13.
[45] FED. R. CIV. P. 24(b)(1)(A).
[46] *Id.* at 24(b)(1)(B).

[C]ourt must [also] consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."[47] The grant of permissive intervention lies within the district court's discretion.[48] Here, no relevant federal statute exists.

Generally, courts first determine whether "an applicant's claim or defense and the main action have a question of law or fact in common."[49] If the court answers in the affirmative, it is then up to the court's discretion to grant the movant's intervention.[50]

Here, the State's defense of livestock grazing on the Duck Creek allotment shares common questions of law and fact with the main action. Specifically, the State intends to contest WWP's assertion that IBLA's ruling was improper.[51] WWP argues that permitting the State to intervene would unduly delay and enlarge the scope of this case beyond the "numerous legal and factual flaws in IBLA's Duck Creek decision."[52] WWP's argument, however, does not specify how the State's participation in the proceeding would unduly delay or enlarge the scope of the case. Indeed, the State's defenses in its proposed answer to WWP's complaint share the main action's common questions of law and fact.[53] For these reasons and those stated above, the Court will grant the State's Motion.

### III.    CONCLUSION

It is therefore

ORDERED that the State's Motion to Intervene (Docket No. 12) is GRANTED.

---

[47] *Id.* at 24(b)(3).
[48] *Kane Cty.*, 597 F.3d at 1135.
[49] *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002) (quoting FED. R. CIV. P. 24(b)(2)).
[50] *Id.*
[51] *See* Docket No. 12-1, at 12.
[52] Docket No. 15, at 12.
[53] *See* Docket No. 12-4.

DATED October 15, 2019.

BY THE COURT:

Ted Stewart
United States District Judge