IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT,<br><br>Plaintiff,<br><br>v.<br><br>INTERIOR BOARD OF LAND APPEALS and UNITED STATES DEPARTMENT OF THE INTERIOR,<br><br>Defendants, and<br><br>STATE OF UTAH, UTAH SCHOOL AND INSTITUTIONAL TRUST LANDS ADMINISTRATION, AND UTAH DEPARTMENT OF AGRICULTURE,<br><br>Defendant-Intervenors | MEMORANDUM DECISION AND ORDER DENYING MOTION TO RECUSE<br><br><br>Case No. 1:19-CV-95-TS-PMW<br><br>District Judge Ted Stewart |

This matter is before the Court on a Motion to Recuse by Plaintiff Western Watersheds Project ("WWP"). For the following reasons, the Court will deny the Motion.

## I.    BACKGROUND

WWP is a conservation group devoted to improving grazing management across the western public lands. WWP brought this lawsuit to reverse a decision of the Interior Board of Land Appeals ("IBLA") and to reverse the Bureau of Land Management's ("BLM") decision renewing grazing permits on the Duck Creek allotment. The Duck Creek Allotment consists of 1,078 acres of state lands, 8,617 acres of private land, and 13,090 acres of federal land located wholly in Utah.

In 2008, WWP presented BLM with evidence that grazing on the Duck Creek allotment was degrading fish and wildlife habitat among other damage in violation of environmental

statutes.[1] Nevertheless, BLM approved a new grazing decision for the Duck Creek allotment. [2] WWP appealed the BLM decision, and an administrative law judge reversed and remanded BLM's decision.[3] BLM appealed the reversal to IBLA, which reversed the administrative law judge's rulings and upheld BLM's 2008 decision.[4]

WWP responded to IBLA's decision by filing this case in the United States District Court for the District of Idaho.[5] IBLA filed a motion to transfer venue, and before that motion was ruled upon, the State filed a motion to Intervene.[6] The Idaho Court granted IBLA's Motion to transfer venue to this Court but did not rule on the Motion to Intervene.[7] On September 18, 2019, this case was randomly assigned to the undersigned.[8] On October 15, 2019, the Court granted the Intervenor-Defendant's Motion to Intervene.[9] Approximately three weeks later, WWP filed the Motion arguing that this Court should recuse itself because of an actual and/or appearance of bias towards "environmentalists, environmental conservation groups, and federal regulation of public lands livestock grazing."[10] The Federal Defendants and Intervenor-Defendants both oppose WWP's Motion to Recuse.[11]

---

[1] *See* Docket No. 15, at 2–3

[2] *See id.* at 3.

[3] *See id.* at 3–5.

[4] *See id.* at 5.

[5] *See generally* Docket No. 1.

[6] *See generally* Docket Nos. 6, 12.

[7] *See* Docket No. 19.

[8] *See* Docket No. 35.

[9] *See* Docket No. 39.

[10] *See* Docket No. 41, at 2.

[11] *See* Docket Nos. 45, 46.

WWP supports its Motion by relying on statements allegedly made by the undersigned over 20 years ago. Those alleged statements include:

1. "Stating '[t]he livestock industry is just one vote away from being obliterated' in reference to President Clinton's proposed increase in public land grazing fees."

2. "Stating '[i]f we pursue policies that destroy rural America, then we are losing a national treasure more valuable than any national park or monument we spend tax dollars on now,' in reference to grazing reform."

3. "Asserting that rural communities are 'a unique natural resource' and should be sustained 'as an important part of the ecosystem' and environment.'"

4. "Stating that 'maintenance of sustainable resources often requires active management by humans,' and 'it has been frequently demonstrated that proper, intensive management of livestock can improve the land and riparian areas to the betterment of wildlife habitat and watershed.'"

5. "Referring to environmentalists as the 'common enemy.'"

6. "Characterizing President Clinton's 1996 decision to designate 1.7 million acres as the Grand Staircase-Escalante National Monument in Utah as 'a day of infamy.'"

7. "Stating '[r]ural Utah feels like a battleground, everything that would promote economic growth is being objected to by obstructionists—environmentalists.'"

8. "Calling the Southern Utah Wilderness Alliance 'Zealots.'"

9. "Stating '[w]e are concerned when we see decisions reached by Federal officials, often in concert with State and local governments, overturned by the actions of interest groups.'"

10. "Stating 'if rural Utahns don't watch out, they could lose control of their destiny' in reference to proposed fee hikes and royalties for extractive industries would drive business from Utah public lands."

11. "Arguing that 'range reform' is one 'of a few examples of the issues [Utah] faces today which are imposed on us in a way by the Federal Government.'"[12]

## II.    LEGAL STANDARD AND DISCUSSION

Plaintiff moves to recuse under two provisions, 28 U.S.C. § 144 and 28 U.S.C. § 455(a). Section 144 states that when a party "makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding." Procedurally, the judge against whom an affidavit of bias is filed may determine the affidavit's timeliness and sufficiency.[13] While making an initial determination of the facial sufficiency of the affidavit, the judge must not determine the truth or falsity of the facts stated therein.[14] Finally "[a] trial judge has as much obligation not to recuse himself when there is no reason to do so as he does to recuse himself when the converse is true."[15]

Section 455(a) states "[a]ny . . . Judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Section 455, unlike Section 144, has no express procedural hurdles.[16] Under this section, a Judge is "under a

---

[12] Docket No. 41, at 5–6.

[13] *See, e.g.*, *Berger v. United States*, 255 U.S. 22, 32–34 (1922); *United States v. Azhocar*, 581 F.2d 735, 738 (9th Cir. 1978); *Hall v. Burkett*, 391 F. Supp. 237, 240 (W.D. Okla. 1975).

[14] *United States v. Bennett*, 539 F.2d 45, 51 (10th Cir. 1976); *Azhocar*, 581 F.2d at 738.

[15] *United States v. Bray*, 546 F.2d 851, 857 (10th Cir. 1976).

[16] *See United States v. Hines*, 696 F.2d 722, 728 (10th Cir. 1982).

continuing duty to ask himself what a reasonable person knowing all the relevant facts would think about his impartiality."[17] Unlike Section 144, under Section 455, the Judge against whom impartiality is charged makes the recusal determination.[18]

### A. Recusal under 28 U.S.C. § 144

To recuse a Judge under Section 144, "an affidavit of bias and prejudice must be timely, sufficient, made by a party, and accompanied by a certificate of good faith of counsel."[19] Importantly, "the mere fact that a party has filed a § 144 motion, accompanied by the requisite affidavit and certificate of counsel, does not automatically result in the challenged judge's disqualification."[20] "Rather, the statute only requires recusal upon the filing of a timely and sufficient affidavit."[21]

Notably, given that the Court must assess the sufficiency of the affidavit and must assume the factual allegations are true, Section 144 mandates that "the attorney presenting the motion . . . sign a certificate stating that both the motion and declaration are made in good faith."[22] This certification requirement protects the integrity of the recusal process and "guard[s] against the removal of an unbiased judge through the filing of a false affidavit."[23]

---

[17] *Id.*

[18] *See, e.g.*, *id.* at 729; *United States v. Cooley*, 1 F.3d 985, 992 (10th Cir. 1993).

[19] *Hinman v. Rogers*, 831 F.2d 937, 938 (10th Cir. 1987) (per curiam).

[20] *Robertson v. Cartinhour*, 691 F. Supp. 2d 65, 77 (D.D.C. 2010); *see also Bray*, 546 F.2d at 857.

[21] *Robertson*, 691 F. Supp. 2d at 77 (internal quotation marks omitted).

[22] *S.E.C. v. Loving Spirit Found. Inc.*, 392 F.3d 486, 496 (D.C. Cir. 2004).

[23] *Id.*

Here, WWP filed a Motion to Recuse and Memorandum in Support,[24] a Certification by WWP's counsel that "this Motion to Recuse is made in good faith,"[25] and a Declaration in Support of Motion to Recuse signed by Erik Molvar, WWP's executive director.[26] WWP's counsel, however, has certified only that the "Motion to Recuse is made in good faith," but makes no certification that the accompanying Affidavit and the substantive factual allegations have also been filed in good faith. Section 144's plain language undoubtedly requires that counsel certify to the Court that both the motion and declaration are made in good faith.[27] Section 144's technical requirements are not pointless procedural preconditions. Rather, they "guard against the removal of an unbiased judge through the filing of a false affidavit."[28] Courts have routinely concluded that failure to comply with this requirement is grounds for denying the motion.[29] Accordingly, WWP has not complied with Section 144's procedural requirements and the Court will deny the Motion under this statute.

B. *Recusal under 28 U.S.C. § 455*

Section 455(a) states that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." "A judge has a continuing duty to recuse under § 455(a) if sufficient factual grounds exist to cause a reasonable, objective person, knowing all the relevant facts, to question

---

[24] *See* Docket No. 41.

[25] *Id.* at 11.

[26] *See* Docket No. 41-1.

[27] *Loving Spirit Found. Inc.*, 392 F.3d at 496.

[28] *Id.*

[29] *United States v. Miller*, 355 F. Supp. 2d 404, 405–06 (D.D.C. 2005); *accord Galella v. Onassis*, 487 F.2d 986, 997 (2d. Cir. 1973); *Sataki v. Broad. Bd. of Governors*, 733 F. Supp. 2d 54, 60 (D.D.C. 2010); *Burt v. First Am. Bank*, 490 A.2d 182, 187 (D.C. 1985); *United States v. York*, No. 86-CR-315, 1988 WL 105342, at *1 (N.D. Ill. Sept. 20, 1988).

the judge's impartiality."[30] Section 455 echoes Section 144 in many ways, but unlike Section 144, it has "no express procedural hurdles . . . ."[31]

To disqualify under Section 455, WWP must demonstrate that a reasonable person, knowing all the relevant facts, would harbor doubt about the Court's impartiality towards WWP.[32] In doing so, the Court's analysis is limited "to outward manifestations and reasonable inferences drawn therefrom."[33] "[T]he Judge's actual state of mind, purity of heart, incorruptibility or lack of partiality are not the issue."[34] The Court also recognizes that "cases within § 455(a) are extremely fact driven 'and must be judged on their unique facts and circumstances more than by comparison to situations considered in prior jurisprudence.'"[35] The Tenth Circuit has also made clear that Section 455 "is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice."[36] Section 455 should also not be so broadly construed that recusal is mandated "upon the merest unsubstantiated suggestion of personal bias or prejudice."[37] With that being said, the Tenth Circuit has compiled a nonexhaustive list of various matters not sufficient to require Section 455 recusal:

> (1) Rumor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters; (2) the mere fact that a judge has previously expressed an opinion on a point of law or has expressed a dedication to upholding the law or

---

[30] *United States v. Pearson*, 203 F.3d 1243, 1277 (10th Cir. 2000).

[31] *Hines*, 696 F.2d at 728.

[32] *See Cooley*, 1 F.3d at 992 ("[t]he test in this circuit is whether a reasonable person, knowing all the relevant facts, would harbor doubt about the judge's impartiality." (internal quotation marks omitted)).

[33] *See Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995).

[34] *Id.* (quoting *Cooley*, 1 F.3d at 997).

[35] *Id.* (quoting *United States v. Jordan*, 49 F.3d 152, 157 (5th Cir. 1995)) (alteration omitted).

[36] *See Switzer v. Berry*, 198 F.3d 1255, 1258 (10th Cir. 2000) (internal quotation marks omitted).

[37] *Id.* (internal quotation marks omitted).

a determination to impose severe punishment within the limits of the law upon those found guilty of a particular offense; (3) prior rulings in the proceeding, or another proceeding, solely because they were adverse; (4) mere familiarity with the defendant(s), or the type of charge, or kind of defense presented; (5) baseless personal attacks on or suits against the judge by a party; (6) reporters' personal opinions or characterizations appearing in the media, media notoriety, and reports in the media purporting to be factual, such as quotes attributed to the judge or others, but which are in fact false or materially inaccurate or misleading; and (7) threats or other attempts to intimidate the judge.[38]

WWP argues that a reasonable person would harbor doubt of impartiality because "Judge Stewart's personal, extrajudicial statements . . . demonstrate . . . at least the appearance of bias . . . in favor of the State of Utah, resource extraction, and public lands grazing, and against environmental groups, environmental conservation, and federal public lands management . . . ."[39] Defendants challenge this assertion by arguing that courts have routinely rejected the notion that "a judge's previous advocacy for a legal, constitutional, or policy position is a bar to adjudicating a case, even when that position is directly implicated in the case before the court."[40] Defendants also argue that there is only a "tangential relationship between the evidence in this case and Judge Stewart's alleged prior statements . . . ."[41] In other words, "[a]llegations of bias toward Plaintiff raised against Judge Stewart are based on speculation, drawing incomplete parallels with Judge Stewart's previous statements about different environmental groups and different issues."[42]

The Court is unconvinced that the undersigned's alleged statements would cause a reasonable person to harbor doubt about the Court's impartiality. WWP's list of alleged

---

[38] *Cooley*, 1 F.3d at 993–94 (citations omitted).

[39] *See* Docket No. 41, at 8

[40] *See* Docket No. 46, at 1 (quoting *Carter v. W. Pub. Co.*, No. 99-11959-EE, 1999 WL 994997, at *9 (11th Cir. Nov. 1, 1999)).

[41] *Id.* at 4.

[42] Docket No. 45, at 5.

statements do not concern the parties or issues in this case, and a judge's prior comments on public policy and the law are not grounds for recusal.

WWP relies only on the undersigned's past, alleged comments to support its argument of bias for Defendants and against WWP.[43] Specifically, WWP argues that the "totality of Judge Stewart's comments"[44] demonstrate "a pattern of hostility against both environmental organizations and federal oversight, demonstrating bias . . . ."[45] In other words, "Judge Stewart's prior comments disparaged environmentalists, environmental groups, and federal oversight of public lands, while amplifying the social and economic benefits of State-based land management and public lands livestock grazing."[46] From this, WWP argues that "[t]hese statements show personal bias regarding key issues and parties in this case."[47]

A reasonable person would not harbor doubt of impartiality because none of the undersigned's alleged prior statements refer expressly or implicitly to any party in this case. Also, the statements do not refer to this case's issues. For example, as stated on multiple occasions by WWP in prior briefing, "this case challenges the Duck Creek decision by Defendant [IBLA] for applying erroneous legal standards and arbitrarily overturning witness credibility determinations . . . ."[48] Also, "the focus of WWP's claims in this Court" are the "legal and factual errors by Defendant IBLA."[49] This case—by WWP's own statement—is not about grazing fees, national monuments, the Clinton administration's Rangeland Reform initiative, or

---

[43] *See* Docket No. 41, at 8.

[44] Docket No. 47, at 3.

[45] *Id.* at 2.

[46] *Id.* at 3.

[47] *Id.*

[48] *See* Docket No. 15, at 2.

[49] *Id.* at 8.

the Southern Utah Wilderness Alliance; all topics the alleged comments discuss. Instead, as

framed by WWP in its complaint, this case concerns the narrow issue of whether IBLA's

decisions were "arbitrary, capricious, not supported by substantial evidence, an abuse of

discretion, and otherwise not in accordance with law . . . ."[50] A reasonable person would not

conclude that comments allegedly made twenty years ago about a narrow set of political issues

are demonstrative of bias towards this case's narrow issue.[51]

WWP relies on *Cooley* to argue that the Court should consider "the totality of Judge

Stewart's comments" and conclude, as the *Cooley* court did, that the undersigned's prior

statements were disqualifying. *Cooley*, however is distinguishable from the present case. First,

WWP provides no citation for the proposition that this Court is to look to the totality of a Judge's

prior statements and then infer from those statements a bias towards a group. In fact, the *Cooley*

court did not follow this "totality approach" but instead focused in on a narrow set of statements

made during one media interview while "not address[ing] the effect of other interviews . . . ."[52]

Second, the *Cooley* court's primary concern on appeal was comments made by the District Judge

during a media interview while the Judge was a commissioned, Article III Judge.[53] Here, the

undersigned was not a district court judge when the alleged comments were made, but was the

---

[50] *See* Docket No. 1 ¶ 68.

[51] *See Wessmann by Wessmann v. Bos. Sch. Comm.*, 979 F. Supp. 915, 917–18 (D. Mass. 1997) ("declining to require recusal when a judge has helped to formulate policy or been associated with relevant, politically-charged issues," such as school desegregation and civil rights issues); *Nat'l Rifle Ass'n of Am., Inc. v. City of Evanston*, No. 08 C 3693, 2008 WL 3978293, at *2–5 (N.D. Ill. Aug. 22, 2008) (declining to recuse based on comments regarding gun control in a case challenging the city's ban on handgun possession).

[52] *See Cooley*, 1 F.3d at 995.

[53] *See id.* ("It was an unusual thing for a judge to do . . . .").

Executive Director of Utah's Department of Natural Resources.[54] For these reasons, this case is distinguishable from *Cooley*.

WWP's bias allegations also attempt to overgeneralize the alleged statements by extrapolating statements about specific issues to include broad, undefined groups such as "environmentalists, environmental groups," and those who believe in federal (as opposed to state) oversight of public lands.[55] This is an example of a composition fallacy.[56] It does not follow that just because the undersigned allegedly expressed an opinion that "rural communities" are "a unique natural resource,"[57] that the 1996 decision to designate the Grand Staircase-Escalante National Monument was a "day of infamy,"[58] or that the Southern Utah Wilderness Alliance are "zealots"[59] that a reasonable observer would conclude that the undersigned is biased towards all environmentalists or environmental groups. Were the Court to follow WWP's logic then "[o]ne might as well say that someone who becomes a judge following a career as a prosecutor is disqualified in all criminal cases . . . because prosecutors are partisans and all partisans favor the causes they have espoused."[60]

The Court will also deny WWP's Motion because Courts have consistently rejected the argument that statements made by a judge, prior to his rise to the bench, regarding legal or policy

---

[54] Docket No. 41, at 5.

[55] *See* Docket No. 47, at 3.

[56] *See Rosen v. Unilever U.S., Inc.*, No. C 09-02563, 2010 WL 4807100, at *5 (N.D. Cal. May 3, 2010) ("The 'fallacy of composition' is committed when one reasons from the properties of a 'part' to the properties of the 'whole.'").

[57] *See* Docket No. 41, at 6.

[58] *Id.*

[59] *Id.*

[60] *Guardian Pipeline, L.L.C. v. 950.82 Acres of Land*, 525 F.3d 554, 556–57 (7th Cir. 2008).

positions are not grounds for forced recusal.[61] WWP does not challenge this legal proposition but

argues that the alleged statements "cannot reasonably be characterized as legal or policy

views."[62] WWP argues that *Laird* is inapplicable because, unlike *Laird,* the statements here were

not made in a deliberative forum and were not given for the purpose of exploring the nuances of

any particular area of law.[63] Also, the statements "were clearly offered in political settings as

rhetorical hyperbole meant to advance a particular interest."[64]

    WWP's attempt to distinguish *Laird* and its progeny from the present case is

unconvincing. Neither *Laird* nor any of its progeny support WWP's proposition that statements

must be: 1) made in a deliberative forum; 2) made for purposes of exploring nuances of a

particular area of law; 3) not offered in a political setting; and 4) not overstated or used to

advance a particular interest. For example, in *United States v. Corbin*, the judge relied on *Laird*

to deny a motion to recuse based on statements the judge made to a newspaper reporter regarding

the dangers of methamphetamine.[65] Those comments were later reported in a Maine

---

[61] *See, e.g.*, *Laird v. Tatum*, 409 U.S. 824, 835 (1972) ("Since most justices come to the bench no earlier than their middle years, it would be unusual if they had not by that time formulated at least some tentative notions which would influence them in their interpretations . . . . It would be not merely unusual, but extraordinary, if they had not at least given opinions as to constitutional issues in their previous legal careers . . . . Yet whether these opinions have become at all widely known may depend entirely on happenstance."); *Bray*, 546 F.2d at 857; *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 471 F.3d 1355, 1358 (D.C. Cir. 2006) (Kavanaugh, J.); *Rosquist v. Soo Line R.R.*, 692 F.2d 1107, 1112 (7th Cir. 1982) (affirming a district court judge's decision to not recuse "merely because he holds and had expressed certain views on [a] general subject"); *Carter v. West Pub. Co.*, No. 99-11959-EE, 1999 WL 994997, at *9 ("Courts have uniformly rejected the notion that a judge's previous advocacy for a legal, constitutional, or policy position is a bar to adjudicating a case, even when that position is directly implicated in the case before the court.").

[62] Docket No. 47, at 4.

[63] *Id.*

[64] *Id.* at 5.

[65] 827 F. Supp. 2d 26, 29 (D. Me. 2011).

newspaper.[66] The defendant moved to recuse the judge from the defendant's methamphetamine distribution trial because the judge's comments demonstrated bias.[67] The judge denied the motion, stating that his methamphetamine comments were "entirely general in nature and not in any way case specific."[68] Here, as in *Corbin*, many of the undersigned's alleged comments were not made in a deliberative forum and were reported in newspapers. Also, the undersigned's comments, like those in *Corbin*, were not for purposes of exploring the nuances of law but were made to advance a particular interest. *Corbin*'s analysis cuts against WWP's rationale for distinguishing *Laird*. Therefore, *Laird's* proposition—that a judge's commentary on public policy and the law are not grounds for recusal—is applicable here.

Finally, under two separate canons of statutory interpretation, recusal under Section 455(a) is improper. First, "a more specific statute will be given precedence over a more general one, regardless of their temporal sequence."[69] Second, statutes should be interpreted to prevent the statute from contradicting itself.[70] Here, Section 455(b)(3) addresses the scenario when a judge previously worked for the government in some capacity.[71] The judge should recuse when the judge "participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy."[72] WWP makes no allegations that Section 455(b)(3) is applicable here. Instead, it only relies on Section 455(a)'s

---

[66] *Id.*

[67] *See id.* at 30.

[68] *Id.* at 32.

[69] *See United States v. Largo*, 775 F.2d 1099, 1102 (10th Cir. 1985) (quoting *Busic v. United States*, 446 U.S. 398, 406 (1980)).

[70] *Liteky v. United States*, 510 U.S. 540, 552 (1994).

[71] *See Levine v. Gerson*, 334 F. Supp. 2d 376, 377 (S.D.N.Y. 2003).

[72] 28 U.S.C. § 455(b)(3).

more general provisions. Section 455(b)(3) is more specific because it applies directly to former government employees and thus should be given precedence. Also, interpreting 455(a) to eliminate the more specific limitations under Section 455(b)(3) would cause the statute to materially contradict itself. For these reasons and those stated above, the Court will deny the Motion.

III.     CONCLUSION

It is therefore

ORDERED that WWP's Motion to Recuse (Docket No. 41) is DENIED.

DATED January 16, 2020.

BY THE COURT:

Ted Stewart
United States District Judge